IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PENGATE HANDLING SYSTEMS, INC., | : | CIVIL NO. 1:06-CV-0993 |
|  | : | JUDGE SYLVIA H. RAMBO |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

## M E M O R A N D U M

This case involves breach of contract and bad faith claims arising out of a dispute over whether Plaintiff Pengate Handling Systems, Inc. is entitled to certain benefits under an insurance policy issued by Defendant Westchester Surplus Lines Insurance Company.  Plaintiff has filed a Motion to Compel Discovery Responses and Deposition Testimony (Doc. 19).  The questions before the court concern whether Defendant may withhold the discovery sought by Plaintiff by asserting the attorney-client and work product privileges.  The attorney-client inquiry turns on whether Defendant's attorney was acting in a legal capacity, while the work product inquiry depends upon whether documents were prepared in anticipation of litigation.

The court finds that Defendant fails to show that the attorney involved was acting solely in his professional capacity as a lawyer at all times and that a number of the communications at issue are not shielded by the attorney-client privilege.  However, because the court cannot discern precisely whether or when he might have been acting as a lawyer versus a claims adjuster with respect to certain communications, an *in camera* inspection of some documents withheld under the attorney-client privilege is appropriate.  With respect to the documents withheld

under the work product doctrine, the court finds that Defendant fails to show that it reasonably anticipated litigation prior to the date Plaintiff served the Writ initiating the suit.

Accordingly, the court will grant Plaintiff's motion in part and reserve ruling on the remainder pending the *in camera* inspection.

## I.        Background

### A.        Relevant Facts

In October 2004, Plaintiff submitted a claim to Defendant under Plaintiff's Professional Liability Policy (hereinafter "the Policy").  (Dean Aff. ¶¶ 5, 7; *see also id.* at Ex. 5 – Doc. 19, Ex. D-5.)[1]  Defendant denied the claim in a letter dated February 7, 2005.  (*Id.* at Ex. 3 – Doc. 19, Ex. D-3.)  On February 11, 2005, Plaintiff, through its insurance broker E.K. McConkey & Co., Inc., requested reconsideration of the coverage denial.  (*Id.* at Ex. 4 – Doc. 19, Ex. D-4.)

A May 13, 2005 letter from Jeffrey Sorkin of Defendant's Professional Lines Claims department to Plaintiff describes subsequent exchanges between the parties in connection with the claim, including a March 15, 2005 meeting, as well as telephone conversations that took place in late April, and early May, 2005.  (*Id.* at Ex. 5 – Doc. 19, Ex. D-5.)  The letter includes references to the involvement of Defendant's attorney in connection with those exchanges and indicates that Defendant hired Kevin Mahoney of Baer & Associates (hereinafter collectively "Mahoney/Baer") as a consultant to evaluate a claim-related estimate provided by

---

[1] The Policy was a renewal policy, with a Policy period from June 1, 2004 to June 1, 2005. (*See id.* at Exs. 1, 2; Doc. 19, Exs. D-1, D-2.)

Plaintiff.  (*Id.*) The May 13, 2005 letter concludes with a request for materials related to the claim.  (*Id.*)

December 2004 correspondence between Mr. Sorkin and Patrick Tomovic at Hodgson Russ LLP indicates that the law firm was retained to provide advice regarding Plaintiff's claim.  (Doc. 25, Ex. A.)  A December 23, 2004 letter from Mr. Sorkin to Mr. Tomovic seeks to engage Hodgson Russ as "coverage counsel."  (*Id.*)  A December 27, 2004 letter from Mr. Tomovic to Mr. Sorkin confirms that Defendant had "expanded the engagement of [the] firm to provide coverage advice" regarding Plaintiff's claim.  (*Id.*)  Kevin Szczepanski, a Partner at Hodgson Russ, is the attorney referenced in Mr. Sorkin's May 13, 2005 letter.  (*See* Doc. 19 ¶ 21; Doc. 25 ¶ 21.)

With respect to Mahoney/Baer's involvement, a February 23, 2005 memo from Mr. Mahoney to Mr. Szczepanski contains a proposal for "cost consulting services" involving a "replacement cost estimate."  (Doc. 26 – Def.'s Br. in Resp. to Pl.'s Mot. to Compel, Jan. 5, 2007, Ex. 1.)

## B.   Procedural History

Plaintiff commenced this suit in the Court of Common Pleas of York County, Pennsylvania, on May 25, 2005.  (Dean Aff., Ex. 6 – Doc. 19, Ex. D-6.) Plaintiff served Defendant with the Writ of Summons on June 21, 2005.  (*Id.* Ex. 7 – Doc. 19 Ex. D-7.)  On May 16, 2006, Defendant removed the case to this court. (Doc. 1.)  The court issued its initial case management order on July 14, 2006 (Doc. 11), which set a fact discovery deadline of February 1, 2007.[2]  Plaintiff served

---

[2]  The case management order was subsequently amended and the current fact discovery
(continued...)

Defendant with a document production request and interrogatories on July 21, 2006. (Doc 19 ¶ 5.)  On September 30, 2006, Defendant responded to Plaintiff's requests with answers and objections and a five-page privilege log.  (*Id.* ¶¶ 6-7.)  Plaintiff made a follow-up request on October 30, 2006, and subsequently sought a conference call regarding that request, which the court held on November 20, 2006. (*Id.* ¶¶ 9-11.)  In accordance with the court's instruction during that call, Defendant provided supplemental interrogatory responses and a modified privilege log on November 29, 2006.  (*Id.* ¶¶ 12-13.)

Plaintiff filed the instant motion to compel on December 13, 2005. (Doc. 19.)  The issues have been briefed and the matter is ripe for disposition.

## II.        Legal Standard – Motion to Compel

Federal Rule of Civil Procedure 26 provides for the discovery of relevant, non-privileged information.  *See* Fed. R. Civ. P. 26(b)(1).[3]  When a party resists discovery by asserting a privilege, that party bears "the burden of proving [the privilege's] existence and applicability."  *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990).  In this regard, the party must specifically show how the asserted privilege applies.  *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (1982) (The party "'must show specifically' how [the information requested] is not

---

[2](...continued)
deadline is April 2, 2007.

[3] Federal Rule of Civil Procedure 26(b)(1) provides in part that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence."  Fed. F. Civ. P. 26(b)(1).

relevant or how [it] is overly broad, burdensome or oppressive" and a "mere statement that [the information sought] is 'overly broad, burdensome, oppressive, and irrelevant' is not adequate to voice a successful objection.").

## III.      **Discussion**

The discovery sought by Plaintiff falls into four categories: 1) discovery withheld under the attorney-client privilege based on the involvement of Hodgson Russ; 2) discovery withheld as the attorney work product or "mental impressions" of Hodgson Russ; 3) discovery of information pertaining to Mahoney/Baer's services that has been categorized as work product; and 4) a supplemented privilege log.  The court will address each in turn.

### A.      **Hodgson Russ Communications**

With respect to Hodgson Russ communications that Defendant claims are protected by the attorney-client privilege, Plaintiff seeks discovery of documents WSLIC00043, 48, 49, 54-57, 58, 63, 64, 68, 70, 79-82, 83, 90, 92, 93, 96, 97, 100-05, 110-11, 125-26, 132-34, 162, 175-78, 179, 224-25, 276, 283, 288-91, 293-334, 336, 350, 380, 388, 816, and 820.  Plaintiff also seeks cooperation in scheduling depositions of Hodgson Russ attorneys regarding claim coverage testimony for events prior to June 21, 2005.

Because this is a diversity action that raises state contract and bad faith claims, Pennsylvania law governs the applicability of the attorney-client privilege. Fed. R. Evid. 501; *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999).  In Pennsylvania,

> [i]n a civil matter counsel shall not be competent or
> permitted to testify to confidential communications made

> to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa. Cons. Stat. Ann. § 5928.  The requirements of the attorney-client privilege are:

> 1) The asserted holder of the privilege is or [is] sought to become a client.
> 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
> 3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or a tort.
> 4) The privilege has been claimed and is not waived by the client.

*Commonwealth v. Mrozek*, 657 A.2d 997, 998 (Pa. Super. 1995).

It is important to note that "[t]he protection of the privilege extends only to *communications* and not to facts."  *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981); *see also U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992) ("The privilege simply does not attach to a discussion of the facts, no matter how extensive or involved the discussion may become.").  Moreover, "[t]he privilege does not exist just because one party to the communication has the title of 'attorney.'"  *U.S. Fid. & Guar. Co.*, 809 F. Supp. at 364.  Rather, it "applies only to discussions where the individual is acting as an advisor, i.e., presenting opinions and setting forth defense tactics as to the procedures to be utilized for an effective defense."  *Id.*; *See also Okum v. Commonwealth of Pa. Unemployment Comp. Bd. of Review*, 465 A.2d 1324, 1325 (Pa. Commw. 1983).

The parties dispute whether Mr. Szczepanski or others at Hodgson Russ were "acting as [attorneys] from whom [Defendant] sought legal services" when

they advised Defendant regarding Plaintiff's insurance claim.[4]  "[T]he manner in which [Hodgson Russ was] hired and the resulting services that [were] performed are of the utmost significance in determining the capacity in which [the firm] was engaged."  *MicroVote Corp.*, 175 at 302.  Plaintiff argues that Mr. Szczepanski acted as an outside investigator or claims adjuster, while Defendants aver that he acted as an attorney providing legal services.[5]

Plaintiff maintains that, at a March 15, 2005 meeting, Mr. Szczepanski identified himself as an "outside consultant" hired to assist with the coverage determination.  (Doc. 19 ¶ 22; Dean Aff. Ex. D ¶ 12.)  Defendant responds that it "is without knowledge or information sufficient to form a belief as [to] the truth of this averment."  (Doc. 25 ¶ 22.)  Defendant points to the December 2004 correspondence between Mr. Sorkin and Mr. Tomovic as evidence of the nature of its engagement of Hodgson Russ.  (*See* Doc. 25, Ex. A.)  The references to Hodgson Russ acting as "coverage counsel" and providing "coverage advice" (*id.*) unfortunately fail to shed much light on the nature of Hodgson Russ's role.  Even the references to Defendant's prior engagement of the firm provide no indication regarding the nature of the services provided by Hodgson Russ.  Finally, a December 22, 2004 e-mail

---

[4]  It appears as though Mr. Szczepanski is the Hodgson Russ attorney primarily involved with the instant matter, although Mr. Tomovic authored the firm's February 27, 2004 engagement letter, and Mr. Tomovic and another attorney, Julie Lodinsky, are referenced in Defendant's privilege log.  (Plaintiff questions whether the J. Lodinsky in the privilege log is John Lopinsky, listed on Hodgson Russ's web site, but the court notes that Ms. Lodinsky is the author of a December 22, 2004 e-mail related to the firm's December 2004 engagement letter included in Exhibit B to Defendant's opposition brief.)

[5]  Defendant frames much of its argument in the context of whether an "advice of counsel" defense has resulted in a waiver of the attorney-privilege.  However, the question here is the threshold one of whether Defendant has met its burden of establishing that the attorney-client privilege applies because the nature of Hodgson Russ's services were legal rather than part of the usual claims examination process.  Waiver is irrelevant if the privilege does not apply.

from Ms. Lodinsky requesting a conflicts check fails to provide any detail that would aid the court in this inquiry.[6]  (*See id.* at Ex. B.)

Because the engagement correspondence is ambiguous at best as to whether Hodgson Russ's role was that of legal advisor or claims adjuster, the court turns to the instant facts to help guide its decision here.  Plaintiff submitted its claim in October 2004.  Defendant retained Hodgson Russ in December 2004.  Defendant denied Plaintiff's claim on February 7, 2005.  Therefore, the court concludes that until the time when Defendant denied the claim, at least, Mr. Szczepanski and others at Hodgson Russ acted as claims investigators or adjusters.  Defendant fails to meet its burden of proving otherwise, given these facts and the nature of the inquiry before Defendant until that time.

Accordingly, the court will grant Plaintiff's motion with respect to communications involving Hodgson Russ attorneys prior to and until February 7, 2005, that were withheld on the basis of attorney client privilege, which include: documents WSLIC00064, 68, 70, 79-82, 83, 90, 92, 93, 96, 97, 100-05, 179, 276, 283, 288-91, 388, 816, and 820.  Likewise, the court will order Hodgson Russ attorneys to cooperate with depositions regarding claim coverage with respect to events prior to February 7, 2005.

As for communications that occurred subsequent to the claim denial, the court is less certain that Hodgson Russ and Mr. Sczcepanski's role would fall solely into the realm of claim investigation.  Nor is the court certain that the claim reconsideration request was so atypical that it would automatically convert the

---

[6] Ms. Lodinsky's email characterizes the relationship as "adverse to [Plaintiff]" (*Id.* at Ex. B), but such language is commonly associated with conflicts checks regardless of the exact nature of representation.

activities of the firm or its attorneys to purely legal ones.  Plaintiff is correct in noting that "[w]here . . . counsel is integrally involved in claims handling, the facts of the insurance company's dealing with its insured cannot be insulated from discovery." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, Pa. D. & C.4th 159, 170 (Phila. County Com. Pl. 2000).  To the extent that Hodgson Russ or its attorneys served a dual role in representing Defendant, the attorney-client privilege would only extend to communications prepared while they acted as legal counsel.  *Id.* at 167-68 (no privileged relationship where attorney was "acting not as counsel but as an adjuster with a law degree").

Because the court cannot identify with certainty the role of Hodgson Russ after February 7, 2005, the court will order *in camera* submission of documents prepared after that date by or for Hodgson Russ attorneys.  These documents include WSLIC00043, 48, 49, 54-57, 58, 63, 110-11, 125-26, 132-34, 162, 175-78, 224-25, 293-334, 336, 350, and 380.  However, in the interest of efficiency and conservation of valuable judicial resources, the court strongly encourages Defendant to conduct a thorough review of its documents before submitting them to the court, and submit only those documents that it truly believes fall into a legal or mixed category so as to implicate the attorney-client privilege in light of the court's reasoning here.  At the time of submission Defendant shall account for each document identified for *in camera* inspection and state whether it is being provided to the court or has already been provided to Plaintiff.

The court will withhold ruling on Plaintiff's request for Hodgson Russ attorneys' cooperation with depositions regarding claims coverage testimony for

events occurring between February 7 and June 21, 2005, until after the court has reviewed the documents submitted by Defendant.

## B.   Hodgson Russ Work Product

With respect to documents that Defendant claims are protected work product or contain "mental impressions" of Hodgson Russ attorneys, Plaintiff seeks discovery of documents WSLIC00038-39, 46-47, 53, 60, 61-62, 73, 74-76, 77-78, 93, 169-72, 173-74, 224-25 (undated materials from unidentified source), 293-334 (undated materials from unidentified source), 423-24, 568, 817-19 (undated handwritten notes), and 822-31 (undated material).[7]

The court looks to the Federal Rules of Civil Procedure in deciding questions concerning the work product privilege. *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) ("Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)."). Federal Rule of Civil Procedure 26(b)(3) provides:

> Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> (3) **Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule [pertaining to experts], a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to

---

[7] Plaintiff had also initially requested documents WSLIC00018-21 (undated materials) but has withdrawn that request.

> obtain the substantial equivalent of the materials by other
> means.  In ordering discovery of such materials when the
> required showing has been made, the court shall protect
> against disclosure of the mental impressions, conclusions,
> opinions, or legal theories of an attorney or other
> representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

The instant work product inquiry focuses on the requirement that the information sought be "prepared in anticipation of litigation."[8]  *Hydromar, Inc. v. Gen. Dynamics Corp.*, 115 F.R.D. 147, 149 (E.D. Pa. 1986); *see Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) ("[T]he party seeking to assert the work product privilege has the burden of proving that at the very least some articulable claim, likely to lead to litigation, [has] arisen.") (internal quotations omitted).  The test for determining when something has been prepared "in anticipation of litigation" is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation."  *In re Grand Jury Proceedings (FMC)*, 604 F.2d 798, 803 (3d Cir. 1979) (emphasis added).  In practice, this means that "[a] more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business."  *Binks*, 709 F.2d at 1119.  Further, "[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured."  *Pete Rinaldi's*, 123

---

[8]  The parties do not present arguments regarding the other two criteria for asserting work product protection, that the material be documents or tangible things and be prepared by or for the party or the party's representative.  *See Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 201 (M.D.N.C. 1988).

F.R.D. at 202.  The decision regarding when "an insurance company's activity shifts from mere claims evaluation to a strong anticipation of litigation" turns on the facts of each case.[9]  *Atiyeh v. Liberty Mut. Ins. Co.*, No. Civ. A. 00-2661, 2000 WL 1796420, at *2 (E.D. Pa. Nov. 15, 2000).

The relevant facts before the court are as follows.  Prior to February 7, 2005, the nature of the relationship between the parties is fairly categorized as a typical insurer-insured relationship where a claim has been submitted.  Therefore, the court finds that documents prepared prior to that date fall into a "routine investigation" or "ordinary course of business category" and are not protected work product.

The correspondence between the parties on and after February 7, 2005, also fails to suggest anything other than the ordinary course of business of investigating an insurance claim.  The February 7, 2005 letter to Plaintiff, in which the claim was denied, stated "[i]n the event that you have any additional information that you believe would have an impact on our position, please forward it to [Jeffrey Sorkin] for review." (Compl. Ex. D. at 1.)  The letter further stated that  Defendant's coverage denial had been based on the information it received from Plaintiff and that Defendant was willing to consider additional documents or information that had not yet been provided.  (*Id.* at 5.)  The letter thus indicates that the next move is Plaintiff's without expressing any views that comport with the concept of anticipating litigation.

---

[9]  The court notes that Defendant maintains that "at some point it became logical for Defendant to anticipate litigation," without actually suggesting when that point might have been or what specifically might have been the basis for such anticipation.  (*See* Doc. 23 at 9.)  Thus, the court will proceed with its review of the facts applicable here.

Plaintiff's February 11, 2005 letter requesting claim consideration likewise contains no language that indicates litigation would be likely.  It includes the following:

> We appreciate your continued cooperation in reviewing this claim due to the facts presented in this correspondence. If you have any additional questions or would like to discuss further, please feel free to contact [representatives of Plaintiff].  Otherwise, we anticipate the perspective presented in this response will be sufficient to pay on this claim as originally presented.

(*Id.* Ex. E at 2.)

In addition, the description of the parties' February 2005 correspondence that appears in Defendant's May 13, 2005 letter to Plaintiff (Compl. Ex. F) states only

> Subsequently, on February 7, 2005, we regretfully declined coverage for your claim.  In response to our declination letter, you provided us with additional information we did not have earlier.  We considered that information and provided you a written response.

(*Id.* para. 4.)  The letter also indicates further consideration of information obtained at the March 15, 2005 meeting, and subsequent conversations where Defendant made "an effort to understand [Plaintiff's] response to [Defendant's] coverage position." (*Id.* para. 5.)  Defendant's words fail to reflect any belief by Defendant that these events were related to or anticipatory of litigation.  Rather, it describes a typical process of information sharing and communications related to the business of claims investigation.

Defendant's May 13, 2005 letter to Plaintiff also provides at least a partial summary of what transpired between Plaintiff's February 2005 reconsideration request and May 2005.  The May 13, 2005 letter indicates that Mr.

13

Mahoney of Baer & Associates was retained "as a consultant" to evaluate a compliance estimate that Plaintiff had provided in connection with its claim. (*Id.* para. 6.)  The letter then described the parties' communications in late April and early May. (*Id.* paras. 7-8.)  Although the letter mentions Defendant's "attorney" in connection with the March 15, 2005 meeting and the April and May communications, it does not do so in the context of litigation. (*See id.* paras. 4, 7.)  Rather, the letter addresses facts and circumstances in relation to Defendant's efforts to evaluate Plaintiff's claim and its need for additional information.  Specifically, the letter states that Defendant's attorney met with Plaintiff's representatives "to further discuss your claim.  During that meeting, you again provided us with information we did not have earlier." (*Id.* para. 4.)

Defendant's May 13, 2005 letter concludes with the following:

> We are, as always, available to discuss our coverage position and answer any questions you may have.  But we must have accurate and complete information about your claim.  Please provide us with your invoices for "remediation" costs allegedly incurred to date and the other supporting materials you mentioned to Mr. Mahoney.

(*Id.* para. 9.)  Like the February 7, 2005 coverage declination letter, the May 13, 2005 letter concludes by leaving the next move to Plaintiff.  It is devoid of any suggestion that Defendant perceived a threat of litigation.

The court agrees that it would be short-sighted to impose an automatic rule that a Defendant could not anticipate litigation prior to the filing of a law suit, *see Atiyeh*, No. Civ. A. 00-2661, 2000 WL 1796420, at *1; however, in light of the evidence set forth here, Defendant fails to meet its burden of establishing that it reasonably anticipated litigation at any time prior to June 21, 2005, the date Plaintiff served Defendant with the Writ commencing the law suit.  Accordingly, the court

14

will grant Plaintiff's motion to compel in part, with respect to documents WSLIC00038-39, 46-47, 53, 60, 61-62, 73, 74-76, 77-78, 93[10], 169-72, 173-74, 293-334 (undated materials from unidentified source),[11] 423-24, 568, and 817-19 (undated handwritten notes).

Both parties indicate that they are amenable to *in camera* review of Documents WSLIC224-25, which are described as undated materials from an unidentified source.  Because it is uncertain whether such documents fall within the period of time reviewed above, the court will order *in camera* inspection of these documents and issue a ruling subsequent to such review.

Finally, the court is somewhat unclear as to whether the parties continue to dispute the discovery of documents WSLIC822-31 (undated material). Defendant's opposition brief identifies the documents as correspondence among Peters & Wasilefski, Defendant's local counsel in this action, Hodgson Russ, and Defendant, and generally asserts the attorney-client privilege.  (Doc. 23 at 11.) Plaintiff's reply brief subsequently withdrew its request to discover those materials "to the extent that all such communications were made <u>after</u> June 21, 2005." (Doc. 28 at 9.)  Without more detail regarding dates of the documents or evidence

---

[10]  Defendant's opposition brief states that document WSLIC00093 is dated November 29, 2006; however both the privilege log and Defendants supplement to the privilege log indicate that the correct date is December 14, 2004.  Defendant offers no argument based on the fact that the notes are handwritten.  Thus, document WSLIC00093 falls within the period of time that the court has determined is not entitled to work product protection and, for the reasons stated above, the court will compel discovery of the document.

[11]  Defendant indicates that it believes documents WSLIC00293-334 are the handwritten notes of Mr. Szczepanski.  The only reason proffered by Defendant for their exclusion is exclusion based on the work product doctrine as it relates to Mr. Szczepanski's work for Defendant.  For the reasons stated above Defendant fails to meet its burden of establishing that the work product doctrine applies to documents WSLIC00293-334.  This reasoning similarly applies to documents WSLIC00817-819, which are identified as undated handwritten notes of Mr. Szczepanski.

regarding the nature of Peters & Wasilefski's involvement in this matter, the court is unable to make a determination regarding documents WSLIC822-31 outside of the rulings it has made here.  Accordingly, the court will compel production of any documents included in WSLIC822-31 that were produced before June 21, 2005.  To the extent that Defendant is asserting the attorney-client privilege with respect to those documents based on the involvement of Peters & Wasilefski, instead of the attorney work product privilege asserted up until this point, Defendant has failed to meet its burden of establishing that Peters & Wasilefski acted in a legal capacity, by virtue of its failure to supply any evidence in connection with that representation. Should Defendant wish to submit such evidence prior to the deadline the court establishes for production of the documents compelled here, the court will consider whether an amended ruling is required.

### C.   Mahoney/Baer Work Product

With respect to information involving Mahoney/Baer services that Defendant claims are protected attorney work product, Plaintiff seeks a response to interrogatory no. 17, and production of documents WSLIC00038-39, 46-47, 53, 60, 61, 62, 73, 74-76, 77-78, 169-72, and 173-74.  Plaintiff also seeks to compel Defendant's cooperation with its efforts to subpoena documents and information from Mahoney/Baer, and Defendant's cooperation with Plaintiff in scheduling and taking depositions of Mahoney/Baer regarding services rendered to Defendant prior to June 21, 2005.

Defendant generally asserts that interrogatory no. 17 is so broad that it implicates materials protected by the work product doctrine, as well as by attorney-client privilege.  Interrogatory no. 17 states "[d]escribe all work performed on your

behalf by Baer & Associates in evaluating the Arnold Claim and/or any costs of remediation." (Doc. 19 Ex. H.) As a general matter, the court does not find this interrogatory to be so broad as to automatically implicate the attorney work product doctrine.

Otherwise, although the Defendant's privilege log identified attorney work product as the only basis for withholding these documents, Defendant's instant arguments concerning the work of Mahoney/Baer rely upon third-party disclosure and advice of counsel defense issues that pertain to attorney-client privilege. The court will review the bases for both privileges.

Federal Rule of Civil Procedure 26(b)(4)(B), which governs the applicability of the work product doctrine with respect to non-testifying experts,[12] provides:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(B). The advisory committee notes regarding the rule further provide:

> It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are

---

[12] Mahoney/Baer has been identified as an expert and it appears, based on the parties' arguments here, that Mr. Mahoney will not be testifying at trial.

17

> part of the subject matter of the lawsuit.  Such an expert
> should be treated as an ordinary witness.

*Id.* advisory committee's note.  Therefore, Mahoney/Baer material withheld on the basis of attorney work product is subject to the same "in anticipation of litigation" standard discussed above with respect to the Hodgson Russ materials.

A February 23, 2005 memorandum from Mr. Mahoney to Mr. Szczepanski indicates that Mahoney/Baer was retained to provide an estimate directly related to the coverage investigation, specifically to provide a "replacement cost estimate" and to evaluate the estimate provided by Plaintiff.  (Doc. 26 – Def.'s Br. in Resp. to Pl.'s Mot. to Compel, Jan. 5, 2007, Ex. 1.)  Consistent with the court's findings regarding the work of Hodgson Russ prior to June 21, 2005, the court finds that this evidence fails to establish that Mahoney/Baer was retained or performed work "in anticipation of litigation."

As for the issue of attorney-client privilege, the February 23, 2005 memorandum similarly fails to suggest that Mahoney/Baer was retained for any purpose other than to assist with the processing of Plaintiff's insurance claim. Defendant fails to provide any evidence that would connect Mahoney/Baer's services to the legal services of Hodgson Russ, to the extent that Hodgson Russ may have acted in a legal capacity prior to June 21, 2005.  Moreover, it fails to establish that Mr. Mahoney was anything other than "an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit."  Fed. R. Civ. P. 26(b)(4)(B) advisory committee's note.  Accordingly, Defendant's arguments regarding waiver and abrogation of the attorney-client privilege in connection with Mahoney/Baer materials are misplaced; Defendant fails to meet its threshold burden of establishing that the attorney-privilege applies to such materials.

18

Therefore, the court will grant Plaintiff's motion to compel with respect to interrogatory no. 17, and production of documents WSLIC00038-39, 46-47, 53, 60, 61, 62, 73, 74-76, 77-78, 169-72, and 173-74.  The court will compel Defendant's cooperation with Plaintiff's efforts to subpoena documents and information from Mahoney/Baer, and Defendant's cooperation with Plaintiff in scheduling and taking depositions of Mahoney/Baer, regarding services rendered to Defendant prior to June 21, 2005.

### D.    Privilege Log

Finally, Plaintiff seeks production of a supplemented privilege log that contains information regarding 1) parties privy to withheld information, documents, and/or communications, and 2) identification of the anticipated litigation that forms the basis of Defendant's work-product claims.[13]

In this regard, the parties dispute the meaning of interrogatory no. 6, which requests a privilege log with certain information regarding items withheld on the ground of privilege.  Specifically, the parties dispute the scope of the request to "identify all persons who have been privy to [an allegedly privileged document], including, but not limited to, all cc and bcc recipients, and all persons who were privy to the underlying communications."  (Doc. 19 Ex. J.)  Defendant maintains that compliance with the request would require the overly burdensome task of interviewing "each and every person in its corporate offices" including "each and every lawyer, paralegal, secretary and support staff [person]."  (Doc. 23 at 14.)

---

[13]  Given the court's finding that Defendant fails to establish a basis for the work product privilege, the request for identification of the anticipated litigation is moot.

19

Defendant also avers that a similar investigation would be required at Baer & Associates.  (*Id.* at 15.)[14]

Plaintiff maintains that it is entitled to discovery of information which is "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Plaintiff also points to *McCrink v. Peoples Benefit Life Inc. Co.* to support its contention that a privilege log "should 'identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure."  No. Civ.A.2:04CV01068LDD, 2004 WL 2743420, at *7 (E.D. Pa. Nov. 29, 2004) (quoting *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993)).  Defendant counters that *McCrink*'s reference to "*parties* to the communications" does not require disclosure of all persons cc'd or bcc'd on the document.

The court is not certain whether Defendant, in saying that it has already identified all *parties* to the privileged communications means to restrict *McCrink*'s use of the term "parties" to parties in the action.  However, *Bowne*, the authority cited by *McCrink*, clearly does not advance such an interpretation, because it discusses the need for information about the "relationship between the individuals listed in the log and the litigating parties."  150 F.R.D. at 474.  Moreover, the court

---

[14]  Defendant bases its argument in part on a literal interpretation of the language, "*persons* privy to."  (*See* Doc. 23 at 15.)  Defendant also points out that Plaintiff's brief in support of its motion to compel uses the language "*third parties* privy to," and responds that if the request is intended to be limited in that manner, Mr. Mahoney of Baer & Associates is the only third party privy to any communications at issue.  However, Plaintiff's reply brief maintains that the request should be construed as "a good faith and reasonable investigation into parties privy to allegedly privileged documents" whether such parties are "third parties" or not.  (Doc. 28 at 13.)  Thus, the court will interpret the request more broadly and proceed with its analysis accordingly.

finds such a narrow interpretation to be inconsistent with Rule 26(b)(1)'s definition of relevance at the discovery stage.

The court finds that persons cc'd and bcc'd on the allegedly privileged communications are certainly relevant in the Rule 26(b)(1) context of being "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In addition, information regarding such individuals falls squarely within the realm of information that would provide "sufficient detail" to a court in reviewing questions regarding privilege at the discovery stage. *See McCrink*, 2004 WL 2743420, at *7. Finally, the court does not see why Defendant would have to interview each and every one of its employees (or Mahoney/Baer's employees) in order to conduct a reasonable and good faith investigation and respond to interrogatory no. 6.

Accordingly, the court will grant Plaintiff's motion with respect to the supplemented privilege log and compel production of a log that contains information regarding 1) parties privy to withheld information, documents, and/or communications. The court will deny the motion as moot with respect to identification of the anticipated litigation that forms the basis of Defendant's work-product claims.

**IV.**      <u>**Conclusion**</u>

In accordance with the foregoing, the court will grant Plaintiff's motion to compel in part, deny the motion in part as moot, and reserve ruling in part, pending an *in camera* inspection of certain documents.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  February 27, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENGATE HANDLING
SYSTEMS, INC.,

        Plaintiff,

      v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

        Defendant.

          CIVIL NO. 1:06-CV-0993

          JUDGE SYLVIA H. RAMBO

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**

1) Plaintiff's Motion to Compel Discovery Responses and Deposition Testimony (Doc. 19) is **GRANTED in part** as follows:

a) Defendant shall provide to Plaintiff documents WSLIC00064, 68, 70, 79-82, 83, 90, 92, 93, 96, 97, 100-05, 179, 276, 283, 288-91, 388, 816, and 820;

b) Hodgson Russ attorneys shall cooperate with depositions regarding claim coverage with respect to events prior to February 7, 2005;

c) Defendant shall provide to Plaintiff documents WSLIC00038-39, 46-47, 53, 60, 61-62, 73, 74-76, 77-78, 93, 169-72, 173-74, 293-334 (undated materials from unidentified source), 423-24, 568, and 817-19 (undated handwritten notes);

d) Defendant shall provide to Plaintiff any documents included in WSLIC822-31 that were produced before June 21, 2005;

e) Defendant shall respond to interrogatory no. 17, and provide to Plaintiff documents WSLIC00038-39, 46-47, 53, 60, 61, 62, 73, 74-76, 77-78, 169-72, and 173-74;

f) Defendant shall cooperate with Plaintiff's efforts to subpoena documents and information from Mahoney/Baer and to schedule and take depositions of Mahoney/Baer regarding services rendered to Defendant prior to June 21, 2005;

g) Defendant shall provide to Plaintiff a supplemented privilege log that contains information regarding parties privy to withheld information, documents, and/or communications;

h) Defendant shall produce to the court for *in camera* inspection documents WSLIC00043, 48, 49, 54-57, 58, 63, 110-11, 125-26, 132-34, 162, 175-78, 224-25, 293-334, 336, 350, and 380.  At the time of submission Defendant shall account for each of these documents state whether it is being provided to the court or has already been provided to Plaintiff.  The court shall reserve ruling on Plaintiff's motion to compel with respect to these documents pending the *in camera* inspection, as well as with respect to Plaintiff's request for Hodgson Russ attorneys' cooperation with depositions regarding claims coverage testimony for events occurring between February 7 and June 21, 2005; and

i) Defendant shall provide all of the information identified in items 1)a)-h) no later than March 15, 2007.

2

2) Plaintiff's motion to compel is **DENIED in part as moot** with respect to a supplemented privilege log that identifies the anticipated litigation that forms the basis of Defendant's work-product claims;

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  February 27, 2007.